The State of Missouri, to use of Isaac B. Clayton, Appellant, v. Jacob Kurtzeborn, Respondent.

| 2a 335 |
| 33a 482 |

### June 6, 1876.

The execution debtor, if the head of a family, has a right to select what property he will hold exempt from execution, over and above apparel and household furniture to the value of $100; and if the property so selected is not valued on appraisement at over $300, it is the duty of the constable to release it. The constable cannot proceed to sell property so claimed until he has had it appraised.

Appeal from St. Louis Circuit Court.

*Reversed and remanded.*

*Jno. P. Hudgens,* for appellant, cited: Wag. Stat. 604, secs. 12–14; State to use v. Barada, 57 Mo. 562; State v. Romer, 44 Mo. 99; 21 Mo. 510, 160.

*Wm. Kreiter,* for respondent.

Bakewell, J., delivered the opinion of the court.

The petition alleges that defendant, as constable, had an execution for $40 and costs against Clayton, to whose use plaintiff sues, by virtue of which, on August 25, 1874, he seized and sold a horse, gig, and harness of Clayton's, who was then a practicing physician, and head of a family, residing in St. Louis county; that at the seizure he duly notified defendant that he claimed said property as exempt under the statutes, and that his entire property did not amount in value to the amount exempted by law from execution. He lays his damages at $300.

Defendant, in his answer, admits the levy and sale, and denies the other allegations of the petition above set forth, and says that he notified Clayton of his right to select what property should be held exempt; whereupon he elected to hold, and did hold, exempt from execution drugs and other personal property other than that described in the petition, and which exceeded in value the amount allowed by law,

and that Clayton, at the time of the levy, had other property—two horses worth $300, household furniture worth $300, and a lot of drugs worth $500.

The reply denies the new matter in the answer. It appeared from the evidence that Clayton was a practicing physician and the head of a family, residing in the city of St. Louis; that he kept a small drug store, and that his stock of drugs, shelving, counters, mare, gig, harness, and books were levied upon, by defendant, on August 15, 1874. On the same day Clayton notified defendant, in writing, that, as a physician and head of a family, he claimed all the property levied upon as being worth less than $300, and exempt from execution; that the constable then released the other property, and retained the mare, gig, and harness; that, five days before the sale, Clayton notified the constable, in writing, that the horse was necessary to his business, and was his only horse, and that the horse and gig were worth less than $150, and that he claimed the same under the statute. The constable, however, proceeded to sell the horse, gig, and harness, under the execution, and sold them for $72. The evidence as to the value of the property seized was that of Clayton, who valued all his drugs, fixtures, and household goods, at the date of the levy, at less than $150, and the mare, gig, and harness at $150. Barback, the plaintiff in the execution, swore that the carpenter told him that the shelving and counters in the store cost $90, and, against the objection of Clayton, a witness was allowed to state that Clayton had told him that he had been offered $600 for his store, and had refused it.

The following instructions, asked by plaintiff, were refused by the court:

1. " If the plaintiff had other property at the time of the levy and sale, and claimed that sold, then it was the duty of the defendant to have levied on such other property, and released such as he claimed exempt, and if defendant sold

property claimed by plaintiff as exempt, and plaintiff was the head of a family at the time, then they will find for plaintiff."

2. "The jury are instructed that, if they believe from the evidence that plaintiff was the head of a family at the time of the seizure and sale of his property mentioned in the petition, and as such claimed the said horse, gig, and harness as exempt, and the same was sold by the defendant after such notice, then they will find for the plaintiff the value of such property sold."

3. "The jury are instructed that if plaintiff was the head of a family at the time of the seizure and sale by the constable, and gave notice before sale that he claimed the horse, gig, and harness as exempt, then they will find for plaintiff the value of the property. And it is immaterial whether he had other property or not. He had the right to select property of the value of $300, in lieu of other articles specified as exempt by law."

The court gave the following instruction of its own motion:

"Under the statute, the head of a family is entitled to hold exempt from execution $100 worth of household goods and furniture, for the convenience and comfort of his family, and $300 worth of other property, which he may select free of execution; and if the property of plaintiff did not exceed in value the amount of $400, then it was all exempt, if he was the head of a family at the time of the levy, and selected the property in dispute before the sale, provided the property so selected did not exceed the amount of $300."

The court refused to give the instruction without the proviso, and added that of its own motion. Exceptions were duly served.

The jury found for defendant, and plaintiff brings the case here by appeal.

Under the statute in this State, a head of a family is entitled to hold exempt from execution wearing apparel,

beds, bedding, and household and kitchen furniture to the value of $100; and also such other property as he may select to the value of $300. It is made the duty of the officer to apprise the debtor of his right of selection, and to appraise the property so selected. If the appraisement does not reach $300 the property cannot be sold; but if the appraisement is $300, or more, the property may be offered for sale, and, if sold for more than $300, the excess shall be applied on the execution, and the remainder paid to the execution defendant.

In the case at bar it was the duty of the constable to appraise the property seized, if the claim exceeded the exemption in the opinion of the officer. Whether the property selected actually exceeded in value $300 was not a question in this case. The constable should not have been allowed to introduce any evidence of its value as matter of justification, in the absence of evidence of an appraisement. The execution debtor, and not the constable, has the right of selection. It matters not if the execution debtor was worth millions, he had a right to claim, as he did, the drugs, shelving, mare, gig, and harness levied upon. When he released the drugs and shelving, and the mare and gig were claimed, the constable was bound to release or appraise them. He is constituted, by the law, the guardian of the rights of the execution debtor in this matter; and he seems to have utterly disregarded his duties and committed a flagrant violation of the plain rights of the debtor and his family. Such conduct cannot be too severely reprobated.

It follows that the law of this case was not correctly given to the jury. Whether the whole property of Clayton was worth $400 or not, he was entitled to choose what he would hold exempt; and whether the property selected was worth $300 or not, he was entitled to have its value determined by appraisement; and, as the mare, gig, and harness were never appraised, and were sold for $72, it is quite clear that Clayton was entitled to a return of them when he

made his application, and that the constable, in shameful ignorance of his most important duties, or by an act of deliberate and wanton oppression, has been guilty of a violation of his official duties, for which his sureties are liable.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.